500 F.2d 349
 David JOHNSON et al., Plaintiffs-Appellees,
v.
SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al.,
Defendants-Appellants (two cases).
David JOHNSON et al., Plaintiffs-Appellees,
v.
SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al., Defendants,
Robert G. Nelson et al., Intervenors-Appellants
(two cases).
David JOHNSON et al., Plaintiffs-Appellees,
v.
SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al., and National
Association for the Advancement of Colored People,
Defendants-Appellees, Guey Heung Lee et
al., Plaintiffs in
Intervention-Appellants.
David JOHNSON et al., Plaintiffs-Appellees,
v.
SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al., Defendants-Appellants.
 Nos. 71-1877, 71-1878, 71-2105, 71-2163, 71-2189 and 72-2980.
 United States Court of Appeals, Ninth Circuit.
 June 21, 1974.
 
 Thomas M. O'Connor, City Atty. (argued), George K. Krueger, Deputy City Atty. (argued), Vivian Hannawalt (argued), Quentin L. Kopp (argued), San Francisco, Cal., for defendants-appellants.
 Arthur Brunwasser (argued), San Francisco, Cal., for plaintiffs-Appellees.
 J. Anthony Kline (argued), San Francisco, Cal., for amicus curiae.
 Before MERRILL, KOELSCH and BROWNING, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This litigation was initiated by parents of black children attending public elementary schools in the San Francisco Unified School District. They seek desegregation of those schools. The schools of the District have never been subject to a statutorily imposed 'dual school system' separating blacks from whites. The plaintiffs contend that acts of de jure segregation have been committed by the school Board with the result that the responsibility fell upon the Board to desegregate the school system. The district court ruled in favor of the plaintiffs upon this issue and called upon the parties to submit plans for accomplishing desegregation. Two plans were submitted, one by the plaintiffs and one by the defendants. Both plans provided for the balancing not only of blacks and whites but of Chinese-Americans and other ethnic groups as well.
 
 
 2
 Before court hearings on the plans were scheduled to commence, parents of children of Chinese ancestry attending public elementary schools in the district sought leave to intervene. They additionally sought an order shortening time for service of the moving papers so that their application might be ruled upon in time for them to participate in those hearings. The district court refused to shorten time, and the hearings were held without their participation. Thereafter, the district court denied their application to intervene.
 
 
 3
 The court approved both plans and directed defendants forthwith to carry out desegregation of the elementary schools in the manner provided by one or the other of the two plans. Its findings and judgment are set forth in 339 F.Supp. 1315 (N.D.Cal.1971). Defendants elected to follow the plan which they themselves had submitted. They have been operating under that plan ever since.
 
 I. De Jure Segregation
 
 4
 (Nos. 71-1877, 71-1878, 71-2163, and 71-2189)
 
 
 5
 District-wide integration has been the goal of the School Board for some time, and the plan under which it is now operating had been designed by it, prior to commencement of the instant suit, as a long-range plan to be accomplished gradually over a period of years. The question before us is not the desirability of district-wide integration, but whether the constitutional rights of the litigants necessitate immediate, court-ordered desegregation.
 
 
 6
 More particularly, this appeal presents the question whether the district court applied correct standards in determining that acts of de jure segregation were committed by the defendants. Since this case does not involve a statutorily created dual school system, we delayed taking submission of the case until the filing of the opinion of the Supreme Court in Keyes v. School District No. 1, 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973). In Keyes, as here, the contention was that the 'School Board alone, by use of various techniques such as the manipulation of student attendance zones, school site selection and a neighborhood school policy, created or maintained racially or ethnically (or both racially and ethnically) segregated schools throughout the school district, entitling petitioners to a decree directing desegregation of the entire school district.' 413 U.S. at 191, 93 S.Ct. at 2689. In discussing the standards for determining whether de jure acts of segregation had been committed by a school board, the Court states:
 
 
 7
 'We emphasize that the differentiating factor between de jure and socalled de facto segregation to which we referred in Swann (v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 17-18, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971)) is purpose or intent to segregate.'
 
 
 8
 413 U.S. at 208, 93 S.Ct. at 2697.
 
 
 9
 This court, in Soria v. Oxnard School District Board of Trustees, 488 F.2d 579 (9th Cir. 1973), has construed Keyes as requiring for any finding of unconstitutional segregation a 'determination that the school authorities had intentionally discriminated against minority students by practicing a deliberate policy of racial segregation.' 488 F.2d at 585.[1]
 
 
 10
 Keyes and Soria were filed after the decision by the district court in this case. Quite understandably, therefore, the district court made no finding as to whether the School Board possessed the requisite segregatory intent. On the contrary, the district court treated proof of such intent as unnecessary. 'In the context of segregation,' it held, '(the term de jure) * * * means no more nor less than that the school authorities have exercised powers given them by law in a manner which creates or continues or increases substantial racial imbalance in the schools. It is this governmental action, regardless of the motivation for it, which violates the Fourteenth Amendment.' 339 F.Supp. at 1319. As Keyes and Soria have now made clear, the district court thereby applied an erroneous legal standard in determining that a constitutional violation had occurred.
 
 
 11
 Although the record contains evidence relevant to the question of the School Board's intent, it is not at all clear that the evidence is sufficient to permit a fair resolution of this issue. Because the litigants, like the district court, did not focus upon the issue of intent, we cannot be confident that all of the relevant and reasonably available evidence is now before us. The case must be remanded to afford an opportunity to reexamine the record on the issue of intent. Upon remand the district court will permit the parties to offer such additional evidence as they may desire pertaining to that issue.
 
 
 12
 The school district has been operating under the court-ordered desegregation plan since September, 1971. As in Soria, 'we shall not at this time undo that result.' 488 F.2d at 588. Therefore, the injunction shall remain in effect until the final resolution of the litigation, unless the district court in its discretion modifies it.
 
 
 13
 Nos. 71-1877, 71-1878, 71-2163, and 71-2189 are vacated and remanded for further consideration in light of Keyes v. School District No. 1, 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973), and Soria v. Oxnard School District Board of Trustees, 488 F.2d 579 (9th Cir. 1973), and in accordance with the views here expressed.[2]
 
 II. Intervention
 
 14
 (No. 71-2105)
 
 
 15
 Parents of elementary school children of Chinese ancestry claim entitlement to intervene as a matter of right under Rule 24(a)(2), F.R.Civ.P. They oppose the compulsory reassignment of such students to schools outside the area in which they reside. Alleging, inter alia, that such reassignment will make it impossible for such children to attend community schools offering education in Chinese language, art, culture and history, they contend, on constitutional and equitable grounds, that they are not properly bound by the court's decree, or that, if they are so bound, they are entitled to participate in the fashioning of that decree.
 
 
 16
 Rule 24(a)(2) permits timely intervention when the applicant shows: (1) an interest relating to the property or transaction which is the subject of the action; (2) that the disposition of the action may as a practical matter impair or impede his ability to protect that interest; and (3) that the interest is not adequately represented by existing parties.[3]
 
 
 17
 Appellants claim a sufficient interest in the outcome of the action to satisfy the first requirement of the rule. In Smuck v. Hobson, 132 U.S.App.D.C. 372, 408 F.2d 175, 180 (1969), the District of Columbia Court of Appeals, sitting in banc, concluded that the 'concern (of parents seeking intervention in a desegregation suit) for their children's welfare' was sufficient under the circumstances to satisfy that requirement.[4] We adopted the general rationale of Smuck in Spangler v. Pasadena City Board of Education, 427 F.2d 1352, 1353 (9th Cir. 1970), but there we reached a different result because the third requirement of the rule was not satisfied. Moreover, other courts have recognized that, for purposes of Rule 24(a)(2), all students and parents, whatever their race, have an interest in a sound educational system and in the operation of that system in accordance with the law.[5] That interest is surely no less significant where, as here, it is entangled with the constitutional claims of a racially defined class.
 
 
 18
 The second requirement of the rule, that the applicant be 'so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest,' is similarly satisfied. It is true that here the denial of intervention may leave appellants the practical alternative of asserting in a subsequent lawsuit that the new policies adopted by the school district are unconstitutional. However, appellants additionally seek to influence the manner in which the school district exercises its admitted discretion in formulating and implementing such policies. The denial of intervention may eliminate appellants' opportunity to challenge new policies which, although they may not be constitutionally required, are nevertheless constitutionally permissible. See Smuck, supra, 408 F.2d at 180-181. Moreover, the actual outcome in the court below-- the approval of plans balancing the very class appellants claim to represent-- demonstrates that their interest may indeed by affected.
 
 
 19
 The third requirement for intervention of right is that the applicant's interest not be 'adequately represented by existing parties.' The district court found that 'the vague and conclusory allegations of the complaint in intervention are insufficient to overcome the presumption that government officials are adequately representing the interests of all citizens.'
 
 
 20
 The factual situation before us bears a similarity to that in Trbovich v. United Mine Workers of America, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), in which the Supreme Court held that there was sufficient doubt about the adequacy of representation of a complaining union member by the Secretary of Labor in a suit to set aside an election of union officials to warrant the union member's intervention of right.[6] Here we cannot agree with the district court's conclusion that the school district, which is charged with the representation of all parents within the district and which authored the very plan which appellants claim impairs their interest, adequately represents appellants. Nor do we agree with appellee's contention that the other intervenors in the action, a group of racially mixed parents, adequately represent appellants' distinct viewpoint.
 
 
 21
 The remaining question is whether appellants' application was timely made within the meaning of Rule 24(a)(2).[7] Here, where appellants filed their application eleven days after the proposed plans were filed, but prior to entry of the court's ultimate decree, the district court ruled 'that to allow intervention at this juncture would unduly delay and prejudice the rights of the original parties.' Despite some authority to the contrary,[8] we ordinarily might well conclude, on the facts before us, that the district court acted within its discretion in denying the application as 'untimely.' However, our disposition today of the related appeals-- vacating and remanding the main case below for reconsideration while leaving the injunction in force-- substantially reduces any prejudice to the rights of the original parties and thus undercuts the basis of the district court's ruling.
 
 
 22
 On the peculiar circumstances of this case and in view of our disposition of the related appeals, No. 71-2105 is vacated and remanded with instructions to permit appellants to intervene in accordance with the views here expressed.
 
 III. Attorneys' Fees
 
 23
 (No. 72-2980)
 
 
 24
 The district court entered an order awarding appellees $24,637.50 in attorneys' fees. Appellants took a separate appeal from this order. We vacated submission of this appeal to await the decision of the Supreme Court in Bradley v. School Board, 472 F.2d 318 (4th Cir. 1972), cert. granted 412 U.S. 937, 93 S.Ct. 2773, 37 L.Ed.2d 396 (1973), vacated 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (May 15, 1974), a case involving similar issues. Appellees present three theories in support of the award of fees, each of which assumes a successful plaintiff. Because of our view that the main case must be remanded for further fact-finding, it remains to be seen which party will ultimately prevail on the merits. As matters now stand, therefore, a decision on the attorneys' fees issue would be premature. Accordingly, we vacate the order awarding attorneys' fees and remand for further consideration by the district court when the litigation has been resolved on the merits.
 
 
 25
 It is so ordered.
 
 
 
 [1]
 See Note, Keyes v. School District No. 1: Unlocking the Northern Schoolhouse Doors, 9 Harv.Civ.Rights-Civ.Lib.L.Rev. 124, 149: 'It is now clear that a finding of de jure segregation has basically three prerequisites: (a) school board action (b) with a purpose to segregate (c) which in fact produces segregation in the system.'
 It was with reference to this requirement that Justice Powell disagreed with the majority in Keyes. He stated:
 'The net result of the Court's language, however, is the application of an effect test to the actions of southern school districts and an intent test to those in other sections, at least until an initial de jure finding for those districts can be made. Rather than straining to perpetuate any such dual standard, we should hold forth-rightly that significant segregated school conditions in any section of the country are a prima facie violation of constitutional rights.'
 413 U.S. at 232, 93 S.Ct. at 2709.
 Further: 'I would hold, quite simply, that where segregated public schools exist within a school district to a substantial degree, there is a prima facie case that the duly constituted public authorities . . . are sufficiently responsible to warrant imposing upon them a nationally applicable burden to demonstrate they nevertheless are operating a genuinely integrated school system.'
 413 U.S. at 224, 93 S.Ct. at 2705.
 The Court in Keyes specifically reserved the issue of 'whether a 'neighborhood school policy' or itself will justify racial or ethnic concentrations in the absence of a finding that school authorities have committed acts constituting de jure segregation.' 413 U.S. at 212, 93 S.Ct. at 2699.
 We understand the reserved question to be whether it is sufficient to show intentional discriminatory action by someone other than the school board resulting in racially divided neighborhoods, to which the school board applies a 'neutral' neighborhood school policy. Cf. Kelly v. Guinn, 456 F.2d 99, 106 n. 7 (9th Cir. 1972). Engrafting a neighborhood school policy onto such involuntary neighborhoods may be sufficient ratification of the illicit intent of others to preclude the necessity for showing a purpose by the school board itself to segregate. At this stage of the litigation, this issue is not presented.
 
 
 [2]
 The district court took pendent jurisdiction over plaintiffs' claim that racial segregation also violates state law, specifically 5 Cal.Admin.Code 14020-21. Plaintiffs did not seriously press the pendent claim in this court. Further, it is clear from the district court's opinion that the remedy ordered was based upon the constitutional violation, rather than upon a violation of state law. Therefore, we do not decide whether it was a proper exercise of the district court's discretion, United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), to accept pendent jurisdiction over a state claim where the impact of the state law is as uncertain as it is here. See Jackson v. Pasadena School District, 59 Cal.2d 876, 31 Cal.Rptr. 606, 382 P.2d 878 (1963); San Francisco Unified School District v. Johnson, 3 Cal.3d 937, 958, 92 Cal.Rptr. 309, 323, 479 P.2d 669, 682 (1971). Cf. Mayor v. Educational Equality League, 415 U.S. 605, , 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974)
 
 
 [3]
 Rule 24(a)(2) provides:
 '(a) Intervention of right.
 'Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.'
 
 
 [4]
 The Smuck court looked to the policies underlying the rule, observing as follows at 179-180:
 'The goal of 'disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process' may in certain circumstances be met by allowing parents whose only 'interest' is the education of their children to intervene. In determining whether such circumstances are present, the first requirement of Rule 24(a)(2), that of an 'interest' in the transaction, may be a less useful point of departure than the second and third requirements, that the applicant may be impeded in protecting his interest by the action and that his interest is not adequately represented by others.
 'This does not imply that the need for an 'interest' in the controversy should or can be read out of the rule. But the requirement should be viewed as a prerequisite rather than relied upon as a determinative criterion for intervention. If barriers are needed to limit extension of the right to intervene, the criteria of practical harm to the applicant and the adequacy of representation by others are better suited to the task.'
 
 
 [5]
 See United States v. Board of School Commissioners of Indianapolis, Indiana, 466 F.2d 573, 575 (7th Cir. 1972); Hatton v. County Board of Education of Maury County, Tennessee, 422 F.2d 457, 460-461 (6th Cir. 1970); Atkins v. State Board of Education of North Carolina, 418 F.2d 874, 876 (4th Cir. 1969); Moore v. Tangipahoa Parish School Board, 298 F.Supp. 288, 293 (E.D.La.1969)
 
 
 [6]
 The Court observed at 538-539, 92 S.Ct. at 636:
 'The statute (29 U.S.C. 482(b)) plainly imposes on the Secretary the duty to serve two distinct interests, which are related, but not identical. First, the statute gives the individual union members certain rights against their union, and 'the Secretary of Labor in effect becomes the union member's lawyer' for purposes of enforcing those rights. And second, the Secretary has an obligation to protect the 'vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member.' Both functions are important, and they may not always dictate precisely the same approach to the conduct of the litigation. Even if the Secretary is performing his duties, broadly conceived, as well as can be expected, the union member may have a valid complaint about the performance of 'his lawyer.' Such a complaint, filed by the member who initiated the entire enforcement proceeding, should be regarded as sufficient to warrant relief in the form of intervention under Rule 24(a)(2).'
 The Court also observed at 538 n. 10, 92 S.Ct. at 636:
 'The requirement of the Rule (24(a)(2)) is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal. See 3B J. Moore, Federal Practice P24.09-1 (4) (1969).'
 
 
 [7]
 If the application was untimely, intervention must be denied. N.A.A.C.P. v. New York, 413 U.S. 345, 346, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973). Moreover, the question of 'timeliness' is a matter for the discretion of the trial court and is to be determined from all the circumstances of the case. Id. at 365-366; see also Tesseyman v. Fisher, 231 F.2d 583, 584 (9th Cir. 1955); Pellegrino v. Nesbit, 203 F.2d 463, 465-466 (9th Cir. 1953)
 
 
 [8]
 In Cascade Natural Gas Co. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), the Supreme Court, without discussing timeliness, permitted Cascade, after entry of a consent judgment, to intervene of right in additional proceedings involving the formulation of a divestiture decree. The Court noted that Rule 24(a)(2) 'applies to 'further proceedings' in pending actions.' 386 U.S. at 135-136, 87 S.Ct. at 937. Similarly, in Hodgson v. United Mine Workers of America, 153 U.S.App.D.C. 407, 473 F.2d 118 (1972), the court, citing Cascade, observed at 129:
 'Timeliness presents no automatic barrier to intervention in postjudgment proceedings where substantial problems in formulating relief remain to be resolved.' Other courts, however, have refused to treat Cascade as a 'carte blanche' for intervention, or accept it as applying except to an extraordinary fact situation. See, e.g., United States v. Blue Chip Stamp Co., 272 F.Supp. 432, 435-436 (C.D.Cal.1967), aff'd, Thrifty Shoppers Scrip Co. v. United States, 389 U.S. 580, 88 S.Ct. 693, 19 L.Ed.2d 781 (1968); Spangler v. Pasadena City Board of Education, 427 F.2d 1352, 1354 n. 3 (9th Cir. 1970), and cases cited therein.