[Civ. No. 50701. Second Dist., Div. Two. Apr. 14, 1977.]

BUSTOP, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
BOARD OF EDUCATION OF THE CITY OF
LOS ANGELES et al., Real Parties in Interest.

**COUNSEL**

Paul, Hastings, Janofsky & Walker, Lee G. Paul, Peter D. Collisson and Michael K. Lindsey for Petitioner.

John H. Larson, County Counsel, and John P. Farrell, Deputy County Counsel, for Respondent.

McCutchen, Black, Verleger & Shea, G. William Shea, Winchester Cooley III, Betty Jane Kirwan, Robert B. Damus, David Emmett Reynolds and Jerry F. Halverson for Real Party in Interest Board of Education.

Lynn Pineda, Halvor T. Miller, Jr., Manning, Reynolds & Roberts, A. L. Wirin, Fred Okrand, Thomas G. Neusom, Edward W. Medvene, Shockley, Duff & Hart-Nibbrig for other Real Parties in Interest (plaintiffs Crawford et al., in Los Angeles Superior Court No. C-822854).

## OPINION

**THE COURT.**—In August of 1963, the case of "Mary Ellen Crawford, a minor, by Ellen Crawford, her guardian ad litem, et al, Plaintiffs, vs. Board of Education of the City of Los Angeles,[1] Defendant," (No. C 822 854) was instituted in the Superior Court of Los Angeles County. That action was aimed at correcting the alleged existence of racial segregation in the defendant school district.

In 1976, the California Supreme Court filed its opinion in that case (*Crawford* v. *Board of Education,* 17 Cal.3d 280 [130 Cal.Rptr. 724, 551 P.2d 28]) affirming the trial court's determination that the defendant district was in fact segregated. The court also affirmed the trial court's order directing the defendant to prepare and implement "a reasonably feasible desegregation plan."

Subsequently defendant district undertook the political process of developing a "PLAN FOR THE INTEGRATION OF PUPILS IN THE LOS ANGELES UNIFIED SCHOOL DISTRICT" (the Plan). The record before us does not delineate in detail the procedural steps in that process but we are informed by the parties that citizen as well as staff participation was involved and that divergent recommendations were received and considered.

The ultimate responsibility for promulgating the Plan was that of the elected members of the school board and the wisdom of their proposal is, of course, in the political process subject to the scrutiny and reactions of their constituents. The adequacy of the Plan vis-a-vis the mandate of the court is subject to the scrutiny of the court.

---

[1] The defendant later became the Los Angeles Unified School District.

The Plan was submitted to the Superior Court of Los Angeles County on March 18, 1977, and the issue of its adequacy is currently being litigated. Again we are not provided with the details of the Plan except to the extent that the parties concede that the Plan contemplates a certain amount of mandatory reassignment of students to schools other than their so-called "neighborhood schools," i.e., schools in the area in which they reside.

Prior to the presentation of the Plan petitioner Bustop, a nonprofit corporation, petitioned for leave to intervene in the action pursuant to section 387 of the Code of Civil Procedure. That section provides in part that "At any time before trial, any person, who has an interest in the matter in litigation, or in the success of either of the parties, *or an interest against both,* may intervene in the action or proceeding." (Italics added.)

Bustop is an organization with a membership of 65,000 parents, predominantly white, residing within the Los Angeles Unified School District. The organization's prime objective is the prevention of mandatory reassignment of students to schools other than those which they now attend or choose to attend.

The trial court by minute order entered March 14, 1977, denied Bustop's petition. Bustop petitioned this court for a writ of mandate to compel the trial court to permit intervention. We granted an alternative writ.

Bustop's proposed complaint in intervention alleges, and correctly so, that the Supreme Court in its opinion in *Crawford, supra,* did not require mandatory reassignment of students as a necessary element of any plan.

For that matter the court did not set forth any specific requirements but did state at page 306: "In our view, reliance on the judgment of local school boards in choosing between alternative desegregation strategies holds society's best hope for the formulation and implementation of desegregation plans which will actually achieve the ultimate constitutional objective . . . ."

Plaintiffs and the defendant district both oppose intervention by Bustop. They concede, and we agree, that Bustop represents a point of view which is entitled to and which should be heard and considered. The point of departure is the forum in which that hearing and consideration should take place.

The district's contention is that that point of view was considered in the political process of formulating the Plan but that now the issue is whether the Plan will satisfy the court and not whether the Plan is acceptable to the various elements that make up the district's constituency.

The trial court's order denying intervention followed the position of the district. That order recites as follows:

"This case is now on remand to this Court with the specific direction that it first look to the plans that were to be formulated by the Board to insure that the plans presented and filed with this Court by the respondent have met the constitutional standards in response to the mandate.

"Therefore, within that frame of reference, the stated function of this Court in this portion of the proceedings is limited. There is not, at the present time, the necessity or requirement that the broad equity powers inherent in this Court for the enforcement of injunction or mandate decrees should be called into play. . . ."

The trial court's order further says that it is entered "without prejudice to renew the motions if at a later stage the function of the Court should be radically changed, . . ."

The district's objection to intervention is further based on the arguments that (1) the district represents all of the residents of the district, and (2) that to permit Bustop to intervene would open the way for a multitude of other individuals and groups to also intervene.

For their part plaintiffs argue that the requirements of Code of Civil Procedure section 387 are not met by Bustop in that that organization has no "direct interest" in the outcome since no student has a "right" to remain assigned to any particular school and that any reassignment as a result of this litigation would only be an indirect consequence of an order designed to protect the interest of the minority students. ■ We are of the opinion that facially Bustop satisfied the requirements of Code of Civil Procedure section 387 in its petition to intervene. Its members and the persons whom it purports to represent do have an interest in the litigation.

As was stated in *Johnson* v. *San Francisco Unified School District* (9th Cir. 1974) 500 F.2d 349, at p. 353, "[A]ll students and parents, whatever their race, have an interest in a sound educational system and in the operation of that system in accordance with the law. That interest is surely no less significant where, as here, it is entangled with the constitutional claims of a racially defined class."

Certainly the reassignment of students to schools distant from their residences would have a direct social, educational and economic impact on the students so reassigned and their parents.

This interest of those persons represented by Bustop is not presently represented by the parties to the action. The plaintiffs admittedly represent only the interests of specific minority students. Counsel for the district frankly admitted on oral argument that the district opposes intervention because Bustop's interpretation of the *Crawford* decision is contrary to that of the district's interpretation and in effect the position of the two are opposing. While conceding that *Crawford* does not mandate reassignment or "busing" of students the district contends as a practical matter that compliance with the court mandate requires it. Bustop disagrees.

In *Johnson* v. *San Francisco Unified School District, supra,* parents of elementary school children of Chinese ancestry sought to intervene in an action involving the compulsory reassignment of students in San Francisco to schools outside the area of their residences in order to achieve integration of black students into predominantly white schools. They claimed that such reassignment would impinge on the cultural and educational interests of the Chinese community and that they should be entitled to participate in fashioning any "desegregation" decree. The United States Circuit Court of Appeals agreed. We find that case on principle to be indistinguishable from the case before us.

In answer to the argument that the school board represented all of the district, the court there said at page 354: "[W]e cannot agree . . . that the school district, which is charged with the representation of all parents within the district and which authored the very plan which appellants claim impairs their interest, adequately represents appellants."

The district's fear that Bustop's intervention may lead to a proliferation of interveners is unfounded. Further intervention can easily be

limited by permitting additional intervention only by persons or groups whose interest is presently unrepresented in the action.

Nor would the intervention of Bustop necessitate any duplication of evidence or repetition of proceedings heretofore conducted. While Bustop may recall witnesses for cross-examination or present its own evidence, it must take the proceedings as it finds them at the time of intervention. This includes the qualification of the trial judge and precludes any right to disqualify him pursuant to Code of Civil Procedure section 170.6.[2]

Bustop does not and has not challenged the original finding in this case that the schools of the district are "segregated." Nor does it seek to challenge the principle that the district has a legal responsibility to take action to alleviate that condition. Hence the "trial" of the matter for all practical purposes began with the proceedings aimed at obtaining court approval of the Plan. Bustop's petition to intervene was filed prior to that time and was therefore timely.

 Finally we reach the issue of the trial court's discretion in refusing to permit intervention. We agree with the trial court's statements in its minute order which delineates a limited role for the court in these proceedings and which opines that the input of various constituencies should be confined to the political process. As we view it the single issue before the trial court at this time is whether the Plan satisfies the requirements of the decision of the *California Supreme Court ruling in Crawford.*

Apropos of that concept is the Supreme Court's language in *Crawford v. Board of Education, supra,* 17 Cal.3d 280, at pages 305 and 306: "[S]o long as a local school board initiates and implements reasonably feasible steps to alleviate school segregation in its district, and so long as such steps produce meaningful progress in the alleviation of such segregation, and its harmful consequences, we do not believe the judiciary should intervene in the desegregation process. Under such circumstances, a court thus should not step in even if it believes that alternative desegregation techniques may produce more rapid desegregation in the school district."

---

[2] Bustop has stipulated to waive the provisions of Code of Civil Procedure section 170.6 as a condition of intervention.

So long as the litigation remains in the posture envisioned by the trial judge the role of Bustop as an intervener may be limited by rulings on the admissibility of proffered evidence.

However, lurking in the background is the language of *Crawford,* at page 307: "If, however, a court finds that a local school board has not implemented such a course of action, the court is left with no alternative but to intervene . . . . Faced with a recalcitrant or intractable school board, a trial court may exercise broad equitable powers in formulating and supervising a plan . . . ."

The history of performance of trial and appellate courts in this country in involvement with the operation of schools and school districts unfortunately has too often been one of overinvolvement rather than restraint. We have no way of predicting what turn the present litigation may take and while the trial court's order is a model of judicial restraint, it suggests the possibility that down stream the picture may change.

In the interest of fairness and to insure the maximum involvement by all responsible interested and affected persons, we believe that the proper exercise of discretion would have been to permit Bustop, representing as it does a proper and legitimate interest, to participate in the fashioning of any decree which may result in the mandatory reassignment and busing of students.

Let a peremptory writ of mandate issue directing the trial court to grant Bustop's petition to intervene. The alternative writ is discharged.

The petition of real parties in interest (plaintiffs Crawford et al. in Los Angeles Superior Court No. 822854) for a hearing by the Supreme Court was denied June 9, 1977. Mosk, J., was of the opinion that the petition should be granted.