[Civ. No. 22895. Fourth Dist., Div. One. May 27, 1982.]

FLOYD M. BRUMBAUGH et al., Plaintiffs, Cross-defendants and Appellants, v.
COUNTY OF IMPERIAL, Defendant, Cross-complainant and Respondent.

558

**COUNSEL**

Horton, Knox, Carter & Foote and J. Penn Carter for Plaintiffs, Cross-defendants and Appellants.

James H. Harmon, County Counsel, and Efren N. Iglesia, Assistant County Counsel, for Defendant, Cross-complainant and Respondent.

**OPINION**

**STANIFORTH, J.**—Floyd M. and Margaret J. Brumbaugh (Brumbaugh) sought to quiet title to a strip of land (the road) and to enjoin the County of Imperial (County) from asserting any right or interest therein. In answer the County asserted an easement created in the County on behalf of the public by reason of continuous public use of the road for access to the Colorado River and maintenance thereof for some 25 years. (*Gion v. City of Santa Cruz* (1970) 2 Cal.3d 29 [84 Cal.Rptr. 162, 465 P.2d 50]. The County also claims to be an owner by virtue of the road having been expressly accepted into the county system of highways since 1956 and having been maintained by the County many years before that time. The County cross-complained seeking an injunction to require Brumbaugh to remove approximately 40 feet of chain link fence and other obstructions he erected across the road to prevent access to the Colorado River by the public.

After an extensive evidentiary hearing, the court denied Brumbaugh's claim but granted the County's request for preliminary injunction and ordered the Brumbaughs to remove the chain link fence. The trial court found the County had maintained the road and the public had used it for some 25 years and described it as a strip of land 40 feet in width lo-

cated in that portion of sections 7 and 8 of township 11 south, range 22 east. It runs along the east-west quarterly lines of sections 7 and 8 to the west bank of the Colorado River. The court found the road easement had existed on behalf of the members of the public for access to the Colorado River for over 25 years and due to the maintenance and public usage the County had accepted the road in question into the county's system of highways and that the road is a county road.

 Brumbaugh appeals the grant of preliminary injunction contending (1) the evidence was insufficient to establish the road was acquired by prescription before the County accepted the road, (2) the road was not validly accepted in the county, (3) the court abused its discretion refusing to apply the doctrine of equitable estoppel, and (4) the court's order concerning the size and location of the road was over broad.

FACTS

The road in dispute has been long designated on county road maps as County Road No. 8NO1B in the county system of highways and is located approximately in the northeastern part of Imperial County running in an east-west direction from Walter's Camp Road and ending at the bank of the Colorado River. At the hearing, many witnesses testified to the effect they were long time residents and property owners in the area where the road is located; the road had extended to the banks of the Colorado River as early as the 1950's. These residents described having used the road for access to the Colorado River starting in the year 1950 and observed other members of the public commencing in the same period using this road for access to the Colorado River in connection with recreational activities such as boating, fishing, camping and hunting. Two witnesses testified they regularly used the road in 1948-1949. Several witnesses also testified having observed County employees performing grading and other maintenance work on the road since the early 1950's. These users and witnesses had at no time been prevented from using the road nor had they been required to ask permission.[1]

In 1955, an inventory of the county road system was undertaken by the California Division of Highways pursuant to a contract with the

---

[1]Brumbaugh testifies to some matters which are to some minute degree in controversy. However, pursuant to the basic review rule imposed upon appellate courts, we view the evidence in the light most favorable to the questioned order.

County; the road in question appears in the inventory under designation 8N01. The significance of the listing is that the road was then in the county road system and the County was responsible for its maintenance and improvement. The road described in the 1955 inventory extended to the Colorado River; the inventory indicated among other things, the road had a daily traffic of 34 cars. This inventory was accepted by the Imperial County Board of Supervisors by resolution in 1956. Aerial maps taken in 1959 and 1970 indicate the road extends to the Colorado River. This use of the road by area residents and the public continued into the 1960's and 1970's and the county road employees continued to maintain the road during those years. Obstructions placed across the road during those years in the form of fences were removed by County employees on two occasions.

In 1976, Brumbaugh purchased the real property adjacent to a portion of the road and promptly installed a chain link fence across the road. Following a public hearing, the board of supervisors refused to abandon the road and the County renewed its previous demand for Brumbaugh to remove the chain link fence. Brumbaugh refused and these legal proceedings followed.

DISCUSSION

I

The principle issue is whether the trial court abused its discretion in granting the County's motion for preliminary injunction and in denying Brumbaugh's motion. The evidence is overwhelming that the County's and the public's right to the road in question did not arise by prescription, but by the doctrine of common law dedication. (See *Gion* v. *City of Santa Cruz, supra*, 2 Cal.3d 29, 39, 42 [84 Cal.Rptr. 162, 465 P.2d 50]; *County of Los Angeles* v. *Berk* (1980) 26 Cal.3d 201, 213-214 [161 Cal.Rptr. 742, 605 P.2d 381]; and also 2 Thompson on Real Property (1980) § 369 et seq.)

In the early case of *Bolger* v. *Foss* (1884) 65 Cal. 250, 251 [3 P. 871], the Supreme Court said: "'Prescription' is not a term strictly applicable to a right acquired by the public by the use of a way for any period of time. The law allows prescriptions only to supply the place of *grants*, and inasmuch as the public cannot take by grant, the term 'prescription,' in its strict sense, has no application to highways. The true doctrine would seem to be that immemorial use by the public is evi-

dence of a *dedication*, just as such use by an individual is evidence of a grant to him."

■ Dedication of an easement to a public way may be, of course, by an express act such as where the owner's evidence is offered by a grant deed or reference to deeds, etc. (See 3 Miller & Starr, Current Law of Cal. Real Estate (1977) §§ 20:4-20:5.) Dedication may also be implied in one of two ways: either by the affirmative acts or acquiescence of the property owner (an implied-in-fact dedication), or by the continuous adverse public use of the property throughout the prescriptive period without substantial interference by the owner (implied-in-law dedication). (*Union Transp. Co. v. Sacramento County* (1954) 42 Cal.2d 235, 240-241 [267 P.2d 10].)

*Gion, supra,* involved an implied-in-law dedication as did *County of Los Angeles v. Berk, supra,* 26 Cal.3d 201, 213-214. The implied-in-law dedication differs from the prescriptive approach to easements in that the character of the adverse use necessary to the implied-in-law dedication differs. (*Ibid.*) In a true prescription case, the claimant is seeking a property right *in himself* and therefore the test is whether he has actually claimed the legal right in property. However, in an implied-in-law dedication case, *such a personal claim of right is not required* in order to establish dedication. In *Gion, supra,* 2 Cal.3d at page 39, it is said: "What must be shown is that persons used the property believing the public had a right to such use. This public use may not be 'adverse' to the interests of the owner in the sense that the word is used in adverse possession cases. If a trial court finds that the public has used land without objection or interference for more than five years, it need not make a separate finding of 'adversity' to support a decision of implied dedication." Further, the *Gion* court said: "Litigants, therefore, seeking to show that land has been dedicated to the public need only produce evidence that persons have used the land as they would have used public land. If the land involved is a beach or shoreline area, they should show that the land was used as if it were a public recreation area. If a road is involved, the litigants must show that it was used as if it were a public road." (*Ibid.*)

■ Factually, the matters presented to the trial court here are similar to those in *Gion*. In *Gion* a littoral owner brought a quiet title action to determine his right to develop his three parcels of ocean front property in face of city restrictions affecting the lots. It was shown that members of the public had since before 1900 freely used the lots for

parking, picnicing, fishing, swimming and viewing the ocean. In *Gion*, this public use authorized an injunction against the King family from closing the road that provided the sole access to the beach. Here, as in *Gion*, the public use of the road was "accentuated by the active participation of the [county] in maintaining the land and helping the public to enjoy it." (*Id.*, at pp. 43-44.) There was evidence of county employees grading and doing maintenance work since the 1950's.

It appears a matter of fact that before the formal acceptance of the road into the county system of highways in 1956, an implied dedication had taken place by the prescriptive period of 1948 to 1955. There is substantial evidence to support the rational conclusion the road in question became a public road by the implied dedication process before it was accepted into the county system of highways by the board of supervisors in 1956.

Furthermore, no formal act of acceptance is necessary where the actions of the county employees, commencing as here in the early 1950's, accepted responsibility and control over the road by maintenance and care. (See *Union Transp. Co. v. Sacramento County, supra*, 42 Cal.2d at p. 244.)

## II

Brumbaugh contends the County could not have validly accepted the road into the county road system in 1956 because at the time the County attempted to accept it, it was no more than 20 feet wide. He reaches this incorrect conclusion by a flawed route. First, Brumbaugh cites an Attorney General opinion issued in 1946 which relied upon section 906 of the Streets and Highways Code which required: "The width of of all county highways, other than bridges, alleys, lanes and trails, shall be at least 40 feet, . . ." However, 10 years after the issuance of the Attorney eneral opinion relied upon by Brumbaugh, a further Attorney General opinion stated: "The 40 foot width requirement in section 906 of the Streets and Highways Code only applies to county roads established by formal act of the county and has no application to county roads established by dedication." (28 Ops.Cal.Atty.Gen. 30, 31 (1956).) The opinion concludes that if a road has been dedicated under "common law form of dedication either by implied 'grant in fact', or implied grant 'in law', based upon an adverse public use," "the 40 foot width requirement would have no application." (*Id.*, at p. 33, fn. omitted.) (See also,

*Mulch* v. *Nagle* (1921) 51 Cal.App.559 [197 P. 421], *Union Transp. Co.* v. *Sacramento County, supra,* 42 Cal.2d at p. 244.)

## III

If we accept, arguendo, Brumbaugh's assumption the public rights in this road were not perfected in 1956 he still does not prevail. An implied dedication took place thereafter due to the continuous public use of the road in the 1960's and 1970's. Brumbaugh himself concedes that before his purchase in 1976 of the adjacent properties, he had visited the area and had seen the road in the latter part of 1972 or early 1973. Brumbaugh's own witnesses testified as to the existence of the road and their use of it in the 1960's and 1970's. In that period (commencing 1968) the road was wide enough to allow a witness to land his private plane on it. The plane had a wing span of 31 feet and was landed hundreds of times.

We conclude that there was more than substantial evidence to support the conclusion an implied acceptance of the road by the County's use and maintenance of it since 1948 to 1955, and that continued use factor must be added to that valid formal acceptance of the road to the system of highways in 1956. If such acceptance was for some reason invalid, there has been a continuous public use thereof as well as maintenance by the County from 1956 to 1977 when Brumbaugh installed the chain link fence across the road.

## IV

■ Brumbaugh next contends that certain representations made by County officials give rise to an equitable estoppel against the County's claim. Equitable estoppel is by nature a factual matter. The trial court here had evidence of an uncertain nature as to Brumbaugh's conversations with the County planning commissioner. However, if the conversations are accepted in full face value together with the inferences Brumbaugh would like to draw from them, the elements required before applying the doctrine of equitable estoppel against the public body are not yet met. ■ These elements are: "'[T]o the application of this principle [equitable estoppel] with respect to the title of property, it must appear, *first*, that the party making the admission by his declarations or conduct, was apprised of the true state of his own title; *second*, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive

fraud; *third*, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge, and *fourth*, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved.'" (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 490 [91 Cal.Rptr. 23, 476 P.2d 423].)

■ These requisite elements are not present. There are no facts showing an intent to deceive, carelessness or culpable negligence of any County official. Brumbaugh's *own maps show the existence of the road*. Parcel map number 868, prepared by Brumbaugh's engineer, indicates the existence and location of county road number 8NO1B. Thus, the record supports the conclusion Brumbaugh had full knowledge of the existence of the road, or through his engineer, he had access to that knowledge. Any reliance which Brumbaugh claims upon any representation of a county agent would be unreasonable in this factual situation. We find no basis for raising an equitable estoppel.

V

■ Brumbaugh finally contends the preliminary injunction is over broad in its description of the road. The preliminary injunction is not the ultimate ajudication of the rights of the parties in this road. The actual width of this road, the extent of actual use by the public over the time, and its width as accepted by the County - whether it be a statutory minimum road of 40 feet or some other width - is a matter for the trial court yet to determine. We find no abuse of discretion in the preliminary injunction as entered.

Order affirmed.

Cologne, Acting P. J., and Work, J., concurred.