[Civ. No. 28138. Fourth Dist., Div. One. Nov. 29, 1983.]

MARY R., Plaintiff and Respondent, v.
B. & R. CORPORATION et al., Defendants and Respondents;
DIVISION OF MEDICAL QUALITY OF THE
BOARD OF MEDICAL QUALITY ASSURANCE,
Movant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, and Barry D. Ladendorf, Deputy Attorney General, for Movant and Appellant.

No appearance for Plaintiff and Respondent and for Defendants and Respondents.

OPINION

**WORK, J.**—The Division of Medical Quality of the Board of Medical Quality Assurance (Division) appeals from an order denying its application to intervene and its request to modify the court's order of confidentiality and sealing of court records issued December 5, 1980, in the dismissed case of *Mary R., etc., et al.* v. *B. & R. Corporation et al.* For the reasons which follow, although we conclude Division was not entitled to intervene in the underlying action, we strike the court's permanent gag order on the original parties and their agents as contrary to public policy and remand the case for further proceedings to determine whether the court records should continue to be sealed from the public.

*Factual and Procedural Background*

On December 8, 1980, Division received a complaint from a marriage and family counselor alleging Mary R., while age 14 and a patient of a licensed physician, had been repeatedly sexually molested by him between August 1975 and April 1976. Mary R. told a Division field investigator there had been a civil lawsuit which was dismissed and the court records sealed. She stated she would furnish information to Division if not prohibited from doing so by court order. In fact, the trial court, when dismissing the action by stipulation, had issued an order sealing the court records and ordered the parties, their agents or representatives never to discuss the case with anyone.

On January 27, 1981, Division told the trial judge of its need to review the court records. However, the trial judge stated the parties had stipulated to the restrictions and it would not rescind the order unless the parties agreed. The physician did not consent.

On March 4, 1982, upon advice of a deputy attorney general who believed the court's order was contrary to public policy, Division directed the Attorney General's office to seek modification of the court's order sealing the court records and documents and to relieve the parties of the order of confidentiality so Division could investigate this serious charge of misconduct by one of its licensees.

On April 21, 1982, Division moved to intervene in the already dismissed lawsuit, alleging the court's order prevented Division from fulfilling its statutory responsibility to investigate and prosecute violations of the Medical Practices Act.[1]

After hearing, the court denied intervention and refused to modify its order, reasoning the application was untimely since Division knew of the contested order one month after its issuance and did not attempt to formally challenge the order until late April 1982. The court found the delay made it impossible for the trial court to place the parties in their original positions and set aside the settlement without substantial prejudice to one or more of the parties in the underlying case.[2]

---

[1] Business and Professions Code, sections 2220 and 2234 outline Division's statutory responsibilities.

[2] Although not relevant to our disposition, we find no factual showing the parties positions changed during the three-month "delay."

## The Trial Court Properly Denied Division's Application for Intervention

Division contends the trial court erred in denying its application to intervene, because the integrity of its investigatory powers requires intervention; laches cannot be employed to bar intervention; the court's underlying order enforces an illegal contract contrary to public policy and void as a matter of law; and the court's underlying order prevents it from properly exercising its police powers.

The source of a party's right in California to intervene in an action is statutory, as Code of Civil Procedure[3] section 387, subdivision (a) provides for permissive intervention within the trial court's discretion. Consequently, the right to permissive intervention is not absolute, as it may be "permitted only if the petitioner shows facts which satisfy the requirements of the statute." (*Socialist Workers, etc. Committee* v. *Brown* (1975) 53 Cal.App.3d 879, 891 [125 Cal.Rptr. 915].) The statute is designed to promote fairness and to insure maximum involvement by all responsible interested and affected persons (see *Bustop* v. *Superior Court* (1977) 69 Cal.App.3d 66, 73 [137 Cal.Rptr. 793]), as it "protects the interests of others affected by the judgment, obviating delay and multiplicity." (*People* v. *Superior Court* (*Good*) (1976) 17 Cal.3d 732, 736 [131 Cal.Rptr. 800, 552 P.2d 760].) However, "[c]ounterbalancing this purpose is the interest of the original parties in pursuing their litigation unburdened by others." (*Ibid.*)

A governmental entity has no greater authority to intervene in the litigation of others than has any other private party. The entity must meet the statutory conditions for intervention and may intervene only where its interests are such as would entitle a private party similarly situated to intervene, or where the public interest warrants it. (59 Am.Jur.2d, Parties, § 156, pp. 588-589.) To avail oneself of the right to intervene, " '[one] must have either an interest in the matter in litigation, or in the success of one of the parties to the action, or an interest against both of them. The interest here referred to must be direct and not consequential, and it must be an interest which is proper to be determined in the action in which the intervention is sought.' . . . 'The interest mentioned in the code which entitles a person to intervene in a suit between other persons must be in the matter in litigation and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment.' " (*Jersey Maid Milk Products Co.* v. *Brock* (1939) 13 Cal.2d 661, 663 [91 P.2d 599]; *Timberidge Enterprises, Inc.* v. *City of*

---

[3]All statutory references are to the Code of Civil Procedure unless otherwise specified.

*Santa Rosa* (1978) 86 Cal.App.3d 873, 881 [150 Cal.Rptr. 606]; *Socialist Workers, etc. Committee* v. *Brown, supra,* 53 Cal.App.3d 879, 891.)

■ Although section 387 should be liberally construed in favor of intervention (*Stillwell Hotel Co.* v. *Anderson* (1936) 16 Cal.App.2d 636, 639 [61 P.2d 71]), the trial court here properly denied Division's request to intervene because it had only a consequential interest determinable in the dismissed underlying action between the original parties. Division's interest here arises solely from the overbroad effect of the ancillary order of confidentiality and the sealing of the court records.

## THE COURT'S STIPULATED GAG ORDER IS AGAINST PUBLIC POLICY

■ Division may collaterally attack the validity of the sealing and gag order where it can establish a right, claim or interest, accruing before the issuance of the order which is prejudiced or injuriously affected by its enforcement. Such relief may be predicated on fraud, collusion, mistake, or lack of jurisdiction. (See *Villarruel* v. *Arreola* (1977) 66 Cal.App.3d 309, 317-318 [136 Cal.Rptr. 19]; *Babbitt* v. *Babbitt* (1955) 44 Cal.2d 289, 293 [282 P.2d 1]; *Bennett* v. *Wilson* (1901) 133 Cal. 379, 382 [65 P. 880]; *People* ex rel. *Public Util. Com.* v. *Ryerson* (1968) 241 Cal.App.2d 115, 119 [50 Cal.Rptr. 246]; *Consolidated Rock Prod. Co.* v. *Higgins* (1942) 54 Cal.App.2d 779, 781 [129 P.2d 929]; *Harada* v. *Fitzpatrick* (1939) 33 Cal.App.2d 453, 459 [91 P.2d 941]; see also *Ryerson* v. *Riverside Cement Co.* (1968) 266 Cal.App.2d 789, 795 [72 Cal.Rptr. 595].)

■ Division's standing is based on its interest in fulfilling its statutory obligations to supervise and regulate the practice of medicine in this state and to investigate allegations of physician misconduct. The court's order prevents it from fulfilling its statutory investigatory duties to benefit public health and safety. The stipulation of the parties, solemnized by the court's order, prohibits the parties or their agents from discussing the underlying facts of the case with Division's investigators and gags, under penalty of contempt, the victim and all witnesses to what, if factual, is a serious breach of professional conduct of grave consequence to future patients and, at worst, shows serious criminal acts. Further, it prevents Division from examining the court's records and documents including depositions and interrogatories which may contain useful information to assist its investigation. Accordingly, this infringement upon the integrity of the investigatory powers of Division establishes its standing to challenge the sealing and confidentiality orders.

■ Laches does not bar relief because it "will not be raised against [governmental entities] when to do so would nullify 'a strong rule of policy,

adopted for the benefit of the public . . . .'" (*County of Los Angeles* v. *Berk* (1980) 26 Cal.3d 201, 222 [161 Cal.Rptr. 742, 605 P.2d 381], quoting *County of San Diego* v. *Cal. Water, etc. Co.* (1947) 30 Cal.2d 817, 829-830 [186 P.2d 124, 175 A.L.R. 747]; *Bib'le* v. *Committee of Bar Examiners* (1980) 26 Cal.3d 548, 553 [162 Cal.Rptr. 426, 606 P.2d 733].) Although equitable defenses have been applied against the government where justice and right require it (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423]), "the doctrine is inapplicable if it would result in the nullification of a strong rule of policy adopted for the benefit of the public." (*Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264]; *Page* v. *City of Montebello* (1980) 112 Cal.App.3d 658, 668 [169 Cal.Rptr. 447].) Here, there is no showing of any manifest injustice suffered by either original party requiring the application of the doctrine of laches, and applying the doctrine would nullify a policy adopted for the public protection.

■ Division's statutory obligation to the medical profession and the public to investigate all complaints of physician misconduct in this state has been effectively blocked by the gag order, by interjecting the court's contempt powers, thus giving a judicial stamp of approval to a ploy obviously designed by the physician to aid him to avoid professional regulation inherent in his securing and keeping his professional license. Were the prosecutrix willing to cooperate with the investigation, she risks contempt by so doing. Likewise, her psychologist and all other of her agents or representatives, including her parents, are gagged, on pain of contempt. Moreover, Division may not examine the court records which may contain depositions, interrogatories, or other discovery materials normally available for public inspection.

The stipulated order of confidentiality is contrary to public policy, contrary to the ideal that full and impartial justice shall be secured in every matter and designed to secrete the evidence in the case from the very public agency charged with the responsibility of policing the medical profession. We believe it clearly improper, even on stipulation of the parties, for the court to issue an order designed not to preserve the integrity and efficiency of the administration of justice (cf. *Younger* v. *Smith* (1973) 30 Cal.App.3d 138 [106 Cal.Rptr. 225]), but to subvert public policy by shielding the doctor from governmental investigation designed to protect the public from misconduct within the medical profession, and which may disclose a professional license of this state was used to establish a relationship which subjected a juvenile patient to criminal conduct. Such a stipulation is against public policy, similar to an agreement to conceal judicial proceedings and to obstruct justice. (*Maryland C. Co.* v. *Fidelity, etc. Co.* (1925) 71 Cal.App. 492, 499 [236 P. 210].) Moreover, in light of the statutory obli-

gation of Division to investigate and regulate the medical profession, "a law established for a public reason cannot be waived or circumvented by a private act or agreement." (*Covino* v. *Governing Board* (1977) 76 Cal.App.3d 314, 322 [142 Cal.Rptr. 812]; Civ. Code, § 3513; see *Bianco* v. *Superior Court* (1968) 265 Cal.App.2d 126, 130-131 [71 Cal.Rptr. 322]; *Benane* v. *Internat. Harvester Co.* (1956) 142 Cal.App.2d Supp. 874, 878 [299 P.2d 750].) Accordingly, since such a contract made in violation of established public policy will not be enforced (*Bianco* v. *Superior Court, supra,* 265 Cal.App.2d 126, 131), it is improper for the court to sanction the parties' stipulation under the pain of threatened contempt. In light of its overbreadth and its intended effect upon the investigation of Division, we strike the order of confidentiality, stressing an enactment designed for the public welfare cannot be abridged by stipulation. (3 Cal.Jur.3d, Agreed Case and Stipulations, § 18, p. 270; see *Wilson* v. *Wilson* (1973) 45 Cal. 399, 405.)

### The Order to Seal the Court Record

█ "The court . . . [possesses] limited power, exercisable under exceptional circumstances and on a showing of good cause, to restrict public access to portions of court records on a temporary basis. . . . When, as here, the relief sought extends to sealing of permanent court records . . . , rather than temporary limitation of access to evidentiary transcripts, the trial court must be careful to limit its denial of access by narrow and well-defined orders." (*Estate of Hearst* (1977) 67 Cal.App.3d 777, 784-785 [136 Cal.Rptr. 821].) █ Since court records are public records, the burden rests on the party seeking to deny public access to those records to establish compelling reasons why and to what extent these records should be made private. (*Id.,* at p. 785.) █ Although a court has power to control its own records to protect litigants' rights "where there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed." (*Id.,* at p. 783, quoting *Craemer* v. *Superior Court* (1968) 265 Cal.App.2d 216, 222 [71 Cal.Rptr. 193].) "In this regard the term 'public policy' means anything which tends to undermine that sense of security for individual rights, whether of personal liberty or private property, which any citizen ought to feel has a tendency to be injurious to the public or the public good." (*Ibid.*) █ Presumably, due to its temporary nature, its infringement upon the public right to know, and thus its similar character to a protective order in a criminal matter, a sealing or confidentiality order in a civil case is always subject to continuing review and modification, if not termination, upon changed circumstances. (See e.g., *Younger* v. *Smith, supra,* 30 Cal.App.3d 138, 159, 160, 164, 166.)

█ █ █ █ █ The trial court here refused to modify its order sealing the court record solely because it incorrectly believed the request

was untimely and its concern that it could not reasonably restore the parties into their original positions because the financial consideration for the agreement was gone.[4] Accordingly, we reverse that part of the order and remand it to the trial court for further proceedings to exercise its discretion to review and determine the propriety of continuing the sealing order based upon a showing by the original parties of compelling reasons why and to what extent these records should remain private, balancing the interests of the private litigants against the public policy of openness and free access to public records.

Although the trial court, upon remand, will exercise its discretion with the aid of another full hearing, we note that on the current appellate record a balancing of the public policy of openness and free access to court records, combined with the public policy reflected in the statutory creation of Division as an institution obligated to investigate and regulate this type of matter for the public good, outweighs any consideration in favor of the physician regarding the potential loss of any financial consideration he employed to bargain for his shield of protection contrary to the very public policy supporting the existence of Division as a regulatory governmental agency.

### Disposition:

The order is affirmed insofar as it denies Division's application for intervention. In all other respects, the order is reversed, striking the court's order of confidentiality and remanding the case back for further proceedings consistent with this opinion regarding Division's request for modification of the order sealing court records.

Cologne, Acting P. J., and Hanscom, J.,* concurred.

---

[4]There is no showing of disposition of financial consideration, or even that there was any. It is doubtful that a trial court could find good cause to seal all court records solely because one party paid money to the other or because the parties stipulated. An order sealing court records must be made only after consideration of the interests of the parties and the public. (*Estate of Hearst, supra* 67 Cal.App.3d 777, 784.)

*Assigned by the Chairperson of the Judicial Council.