[No. B001094. Second Dist., Div. One. July 25, 1984.]

VAL MAUREEN KNIGHT, Plaintiff and Respondent, v.
ALEXANDER ALEFOSIO et al., Defendants and Respondents;
FARMERS INSURANCE EXCHANGE, Movant and Appellant.

COUNSEL

Raymond T. Kaiser and J. Rodney DeBiaso for Movant and Appellant.

Silver, McWilliams & Booth, Donna Silver and Thomas G. Stolpman for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

OPINION

CARSTAIRS, J.*—

## BACKGROUND

Plaintiff, Val Maureen Knight, purchased a contract of insurance from appellant herein in the State of Washington.

Plaintiff was involved in an automobile accident which occurred on August 17, 1979, in the State of California. Plaintiff filed a personal injury action against the driver of the other vehicle involved, Alexander Alefosio, and others. The demand included a claim for loss of income.

Pursuant to the terms of the insurance policy issued by appellant herein, appellant paid income continuation benefits to its insured Val Maureen Knight in the amount of $3,900. No other losses or damages were payable under the policy under the circumstances.

Following discussion and disagreement between counsel for plaintiff and appellant as to whether or not the policy of insurance provided for a con-

---

*Assigned by the Chairperson of the Judicial Council.

tractual right of subrogation as to income continuation benefits, appellant sought leave to intervene.

■ The lower court determined that there was no such contractual right and leave to intervene was denied. This appeal arises out of such ruling. The order is appealable. (*In re Veterans' Industries, Inc.* (1970) 8 Cal.App.3d 902, 916 [88 Cal.Rptr. 303].)

## APPELLANT'S CONTENTIONS

Appellant contends in this appeal that the trial court abused its discretion in holding that:

1. Appellant does not have a subrogation interest under 387, subdivision (a) of the Code of Civil Procedure.

2. The doctrine of equitable subrogation does not apply.

3. Appellant does not have the right of intervention under Code of Civil Procedure section 387, subdivision (b).

Generally, where the trial court need not determine a matter in a particular way, its decision is said to be within the court's discretion.

■ "[T]he showing on appeal is wholly insufficient if it presents a state of facts, a consideration of which, for the purpose of judicial action, merely affords an opportunity for a difference of opinion. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice; . . ." (*Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].)

Section 387, subdivision (a), in pertinent part, sets forth the statutory rules for the authorization of intervention.

"Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. . . ."[1]

■ The "interest," it has been said, must be of such direct or immediate character, that the intervener will either gain or lose by the direct legal operation and effect of the judgment. (*People* v. *City of Long Beach* (1960) 183 Cal.App.2d 271 [6 Cal.Rptr. 658], also *Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873 [150 Cal.Rptr. 606], and *Hausmann* v. *Farmers Ins. Exchange* (1963) 213 Cal.App.2d 611 [29 Cal.Rptr. 75].)

■ Appellant claims that it has a contractual right of subrogation based upon a policy of insurance it issued to plaintiff.

Pursuant to the terms of the policy appellant paid benefits under a section of the policy entitled "Personal Injury Protection." These benefits were paid under subsection 2 of the coverage D which is headed "Income Continuation Benefits." Appellant's policy does not contain an express reservation of its right to subrogate with respect to "Income Continuation Benefits." Had appellant intended to reserve such right with respect to payment of these benefits it would have expressly reserved such right as it did with respect to liability and uninsured motorist coverage set forth in other sections of the insurance contracts.

In part II, the section on underinsured motorists, the word "damages" is used several times. In Part V, labelled "Conditions," it is provided that the company is entitled to reimbursement of payment of "damages" when the

---

[1]Code of Civil Procedure section 387, subdivision (a): "Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant, and is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court and served upon the parties to the action or proceeding who have not appeared in the same manner as upon the commencement of an original action, and upon the attorneys of the parties who have appeared, or upon the party if he has appeared without an attorney, in the manner provided for service of summons or in the manner provided by Chapter 5 (commencing with Section 1010) Title 14 of Part 2. A party served with a complaint in intervention may within 30 days after service move, demur, or otherwise plead to the complaint in the same manner as to an original complaint."

insured party has been paid by the company and also recovers from another.[2]

Reference to the policy shows that under the heading "Definitions" the word "Damages" is defined as the cost of compensating those who suffer bodily injury or property damage from an accident.

The moneys paid to plaintiff however, were paid under the section entitled "Income Continuation Benefits." No right of recovery is reserved in respect to these benefits. (Subsection 2 of Coverage D.) Appellant has not paid "damages."[3]

That appellant provided differently for "damages" and "benefits" is evident. It is equally clear that appellant provided for a right of recovery of certain types of payment, and did not provide such right of recovery in respect to "Income Continuation Benefits."

■ Assuming arguendo that an ambiguity exists in the interpretation of the language of the insurance contract it is basic California law that where

---

[2] "PART V-CONDITIONS
"5. Our Right to Recover Payment
"When a person has been paid damages by us under this policy and also recovers from another, we shall be reimbursed to the extent of our payment after that person has been fully compensated for his or her loss.
"Except as limited above, we are entitled to all the rights of recovery of the person to whom payment was made against another. That person must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and do nothing after loss to prejudice our rights.
"It may be necessary for us to make payment under the Underinsured Motorist Coverage due to the insolvency of another insurance carrier. In such a case, our right of subrogation is limited to proceedings directly against the insolvent insurer or receiver. We will exercise those rights which the person insured by the insolvent insurer might otherwise have had, if he or she had personally made the payment."

[3] "PART II-UNDERINSURED MOTORISTS
"2. Income Continuation Benefits
"We will pay up to 85% of the insured person's loss of income from work, subject to the following:
"a. The insured person must have a regular income from an occupation at which he or she was usually working at the time of the accident.
"b. Coverage and payment periods begin 14 days after the date of the accident.
"c. Coverage ends when the earliest of the following events occurs:
"(i) when the insured person is reasonably able to return to his or her usual work.
"(ii) 52 weeks after coverage begins.
"(iii) upon the death of the insured person.
"d. The most we will pay to any insured person is $200 per week, with a maximum of $10,000.
"e. The total combined amount any person can receive under sick leave, any other disability or loss of income benefit, and this coverage shall not be more than 85% of the insured person's weekly income.
"f. Except for you, your family members, your guest passengers, and persons using your insured car with your permission, we will not pay for any accident which occurs outside the state of Washington."

policy provisions are reasonably susceptible of different interpretations, ambiguities or doubt as to the meaning of the policy provisions must be resolved against the insurer. (*Universal Underwriters Ins. Co.* v. *Gewirtz* (1971) 5 Cal.3d 246, 250 [95 Cal.Rptr. 617, 486 P.2d 145]; *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) ▮ In addition nowhere in the policy is there any statement that "benefits" and "damages" are used interchangeably as meaning the same thing. ▮ Where the insurance contract is silent as to subrogation rights it means that such a right was not bargained for and hence not acquired by the insurance company. In so holding, we are only giving effect to the carrier's probable intent as expressed in the policy it drafted. ▮ It follows therefrom that appellant is not a person who has an interest in the matter in litigation or in the success of either of the parties or an interest against both.

There was no abuse of discretion in denying intervention under Code of Civil Procedure section 387, subdivision (a).

### EQUITABLE SUBROGATION

▮ Subrogation is of two sorts: "legal" and "conventional." Legal subrogation has its source in equity and arises by operation of law. (*Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813]; 83 C.J.S., § 3, pp. 585, 586.)

It has been stated that legal subrogation arises by operation of law where a person having a liability or a right or a fiduciary relationship in the premises, pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditors whom he has paid. (83 C.J.S., § 3, p. 585.)

It does not arise from any contractual relationship between the parties, but takes place as a matter of equity with or without an agreement to that effect.

▮ Appellant contends it is entitled to legal (equitable) subrogation in the premises, as well as conventional (or contractual) subrogation.

We have explained herein above that appellant does not have a contractual subrogation right.

We are also satisfied that the principle of equitable subrogation should not be applied here.

As has been said in *Bater* v. *Cleaver* (1935) 114 H.J.L. 346 [176 A. 889]: "The doctrine of subrogation cannot be invoked to override the contract of the parties. It is not applicable where, as here, its enforcement would be inconsistent with the terms of the contract, or where the contract, either expressly or by implication, forbids its application." (P. 892.)

Likewise in 83 Corpus Juris Secundum, section 3, pages 585 and 586, the writer in reviewing decisions throughout the United States concludes: "The doctrine of subrogation cannot be invoked to override and displace the real contract of the parties, or where to do so would be inconsistent with the terms thereof, or where the contract either expressly or by implication forbids its application; and, if the liability of a party is fixed by contract, the doctrine cannot be used either to enlarge or defeat it."

We reject the contention of appellant that it enjoys a right of equitable subrogation notwithstanding its failure to reserve the right under the policy. This would be permitting the company to rewrite the policy to the detriment of its insured who had paid a premium for a designated benefit without the company's right of subrogation.

The reasonable expectation of the insured must be found to be that the company had no right of recovery (subrogation) in respect to income continuation benefits.

"But where the policy reserves the right of subrogation with respect to claims paid under certain policy coverages, it does not have the rights as to other coverages which do not reserve the right." (16 Couch on Insurance (2d ed. 1983) § 61:19, p. 96.)

Our review of the authorities has not disclosed any case where the right of intervention was found to exist in favor of a party to an indemnity or insurance contract where a right of subrogation had been reserved as to one class of payment, and not reserved as to another.

The usual application of equitable subrogation has been as a device to achieve a just result by clothing a party with a right of recovery where he would otherwise be defeated by lack of privity. (*Transit Casualty Co.* v. *Spink Corp.* (1979) 94 Cal.App.3d 124, 132 [156 Cal.Rptr. 360].) Equitable subrogation is a legal device which permits a party who has been required to satisfy a loss created by a third party's wrong to step into the shoes of the loser and recover from the wrongdoer. (*Offer* v. *Superior Court* (1924) 194 Cal. 114, 118-119 [228 P. 11]; *Transit Casualty Co.* v. *Spink Corp., supra,* at p. 132.)

" ' . . . Strictly speaking, there are two distinct causes of action in such cases—one consists of those facts that show the right to be subrogated to the rights of the creditor in the securities held by the latter; the other consists of those facts which show that the security may be enforced against the principal. In the natural order of precedence, the party must establish his right to be subrogated to the security before he can be permitted to enforce it.' " (*Offer* v. *Superior Court, supra,* 194 Cal. at pp. 117-118.)

A close examination of the cases cited by appellant shows they are distinguishable from the facts in this case. They do not stand for the proposition that the equitable right of subrogation is to be applied where the insured is a party plaintiff in an action against a third party tortfeasor and there exists no contractual right of subrogation between insurer and insured.

The doctrine has been applied where the insured has already been made whole by the insurance company and the insurer is proceeding against the individual responsible for the loss. Although there is language in the cases that indicate that it is a doctrine which stands on its own without the necessity for any contractual provision, there appears no decided instance where intervention has been permitted under this theory while the insured is actually pursuing a lawsuit against a person claimed responsible.

In *Offer* v. *Superior Court, supra,* 194 Cal. 114, the insurance company is the plaintiff in a direct action against a third party defendant. The insurer plaintiff's policy with its insured did contain a provision providing for subrogation. In *Amer. Auto Ins. Co.* v. *Seaboard Surety Co.* (1957) 155 Cal.App.2d 192, 196 [318 P.2d 84], two insurance companies were suing each other. One is plaintiff, the other defendant, the lawsuit concerns their responsibility under their respective policies for a judgment obtained by another against one of their insured. Equitable subrogation came into play only because the two insurance companies had no contract with each other and were not in privity.

In *Meyer Koulish Co.* v. *Cannon* (1963) 213 Cal.App.2d 419, 424 [28 Cal.Rptr. 757], an insurance company was suing another party alleged to be responsible under contract to Meyer Koulish for a loss sustained by Meyer Koulish, in the name of Meyer Koulish. There existed a bargained for subrogation right between the insured and the insurance company.

*Deutschmann* v. *Sears, Roebuck & Co.* (1982) 132 Cal.App.3d 912 [183 Cal.Rptr. 573], is a case where the plaintiff insurance company was permitted to bring a separate independent action to recover directly from a third party tortfeasor. The right of subrogation existed in its contract with its insured.

▬ We are aware of no case in which an insurance company has been permitted to intervene in an action for damages suffered by its insured to recover such benefits as it may have paid its insured where there existed no contractual right of subrogation. Appellant is asking the court to allow in equity what appellant failed to reserve for itself under the insurance policy. When appellant seeks to enter the action as an intervener appellant is seeking to recover such part of the proceeds of the recovery as may represent the moneys that it previously paid to the insured. This actually constitutes an effort to seek reimbursement from its own insured. In a very practical sense it constitutes an effort to file a lien against its own insured's cause of action against the third party tortfeasor. ▬ The right to the recovery of the funds which it advanced to its insured had been relinquished effectively under the contract between the company and its insured. The relinquishment of that right was something which was bargained and paid for by the insured. It has been held that an insurer cannot use subrogation to sue its own insured. (*St. Paul Fire & Marine Ins. Co.* v. *Murray Plumbing & Heating Corp.* (1976) 65 Cal.App.3d 66 [135 Cal.Rptr. 120].)

Where the insured is a party plaintiff in an action against a third party tortfeasor, and no contractual right of subrogation is in evidence or admitted by the parties, we are aware of no case where the right of equitable subrogation has been applied, and we decline to apply it here.

APPELLANT HAS NO MANDATORY RIGHT OF INTERVENTION UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 387, SUBDIVISION (B)

▬ This section provides in part as follows: "(b) If any provision of law confers an unconditional right to intervene or if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action . . . ."[4] Appellant's effort to win mandatory intervention does not meet the qualification and standards that have been set forth in the recent case of *California Physicians' Service* v. *Superior Court* (1980) 102 Cal.App.3d 91 [162 Cal.Rptr. 266]. Plaintiff's insurer sought to intervene in plaintiff's malpractice action against the hospital and others. The insurance policy purchased by plaintiff did specifically include a right of reimbursement for the benefits paid under the policy. In addition, the insurer and its insured entered into a separate agreement whereby the plain-

---

[4]Code of Civil Procedure section 387, subdivision (b): "If any provision of law confers an unconditional right to intervene or if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene."

tiff agreed to make a good faith effort to recover the costs of the medical benefits. When the plaintiff apparently ignored this agreement, the insurer, the California Physicians' Service (CPS) sought leave to intervene. The court noted that CPS's right to intervene was grounded in its contract with the insured and its goal was reimbursement.

In respect to the demand for mandatory intervention the court specifically held that a cause of action in tort does not qualify as "property" under the section and that the word "transaction," according to Black's Law Dictionary is "something which has taken place whereby a cause of action has arisen." It therefore held that CPS had no interest in the cause of action of the plaintiff and was at best simply a creditor. The court determined that CPS could pursue a separate action against its insured for reimbursement but held that intervention was not justified.

The order appealed from is affirmed.

Hanson (Thaxton), Acting P. J., and Dalsimer, J., concurred.