196 Cal.App.3d 1192 (1987)
242 Cal. Rptr. 447
SIMPSON REDWOOD COMPANY, Plaintiff and Respondent,
v.
THE STATE OF CALIFORNIA, Defendant and Appellant; SAVE-THE-REDWOODS LEAGUE, Intervener and Appellant.
Docket No. A035470.
Court of Appeals of California, First District, Division One.
December 10, 1987.
*1196 COUNSEL
John K. Van de Kamp, Attorney General, and Charles W. Getz, Deputy Attorney General, for Defendant and Appellant.
John B. Clark, James E. Harrington, A. Robert Rosin and Pettit & Martin for Intervener and Appellant.
Alson R. Kemp, Jr., Randolf J. Rice, Kevin M. Fong and Pillsbury, Madison & Sutro for Plaintiff and Respondent.
OPINION
NEWSOM, J.
Respondent Simpson Lumber Company (hereafter Simpson) initiated this action by filing a complaint to quiet title and for declaratory relief against the State of California (hereafter the State), seeking title to specified parcels of real property located in Humboldt County in Township 12 North, Range 1 East, Humboldt Meridian. Promptly thereafter, *1197 appellant Save-The-Redwoods League (hereafter appellant or the League) filed a motion for leave to intervene (Code Civ. Proc., § 387, subd. (a)) in the action, asserting an interest in the old growth redwood forest sought by Simpson in its complaint. While appellant's motion was pending, the State and Simpson each filed a motion for summary judgment. All motions were heard at a consolidated hearing and ultimately denied.
This appeal followed, contesting only the propriety of the trial court's order denying appellant's motion to intervene. Subsequently, we granted appellant's request for a writ of supersedeas staying the trial court proceedings pending the outcome of the appeal.
A brief description of the historical context may be helpful, commencing with surveys of public lands in Humboldt County performed by S.W. Foreman and John Haughn for the General Land Office (presently the Bureau of Land Mangement) in 1882. Specifically, the Foreman and Haughn surveys purported to establish the boundaries of Township 12 North, Range 1 East, Humboldt Meridian (hereafter the subject township), which now includes Prairie Creek Redwoods State Park and the property under dispute in this action, together with the boundaries of adjacent townships. The section plat maps and field notes reflecting these surveys were approved by the government in February of 1883, but suspended by the commissioner of the General Lands Office in 1884 and 1886 after an investigation revealed "great irregularities" and "fraud" in the methods used by the surveyors. Apparently, Foreman and Haughn failed to set critical section markers, or did so "promiscuously."
John Gilcrest was commissioned to resurvey all of the township and section lines run previously by Foreman and Haughn, and obliterate all inaccurate corners. He did so, altering some of the boundaries of the resurveyed townships. Gilcrest's survey was officially accepted and approved in July of 1889. He failed, however  apparently for economic reasons  to complete the survey. Consequently, no plat map was ever prepared by Gilcrest which depicted section lines in the interior of the subject township.
Thereafter, the land in the area was periodically patented and sold to private settlers, although not without confusion as to which of the two surveys was to be given priority. Some of the land patents were based upon the original, inaccurate Foreman and Haughn plat maps, while others relied upon the incomplete Gilcrest survey.
In 1923, the State began acquiring property for inclusion in the proposed Prairie Creek Redwoods State Park. Appellant contemporaneously embarked upon a program of land acquisition in the area for the purpose of *1198 eventual donation to state and federal parks, purchasing property with contributions from its members and other private donors, who were promised that their contributions would be used to preserve redwood groves within the state park system.
The land so acquired by appellant, which includes all of the parcels to which Simpson claims title in this litigation, was donated to the State in 1932 by way of grant deeds. One such deed, introduced as an exhibit, includes a recital that the land is being transferred to the State "as an addition to or extension of the State Park System." The State's resolution of acceptance contains a similar statement that "said real property is hereby accepted ... for state park purposes and is hereby included in the California State Park System, ..."
With property donated by appellant and acquired through purchases, the State established Prairie Creek Redwoods State Park (hereafter the Park) in 1933. In accordance with pledges given to some of its contributors, appellant also persuaded the State to officially name specified memorial redwood groves  25 of which are on land which Simpson now claims to own  after the donors who made purchase of the lands possible.
Simpson acquired property contiguous to the Park from its predecessor in interest, Sage Land and Improvement Company (hereafter Sage). In 1944, Sage had hired A.B. Bones to determine the precise boundary between its property and the park. Bones conducted a survey relying on the Gilcrest section markers. He used "blazes," and other markings on trees to designate boundaries. The record shows that in conducting its logging operations, Simpson thereafter relied upon Bones's survey, as did the Park. Bones's survey also provided the "base" for subsequent surveys in the area.
Then, in 1978, the Bureau of Land Management performed a "dependent resurvey" of the east boundary of the subject township, and specified adjacent townships (hereafter the BLM survey) in anticipation of the establishment of the Redwood National Park in that area. The BLM survey resulted in a reconstruction of the original Foreman and Haughn survey to define the east boundary of the subject township based upon extrapolation from discovery of widely scattered section markers set in 1882 by the original surveyors. The boundaries for adjacent townships were determined by use of the Gilcrest and Bones surveys.
As a result of the BLM survey, the federal government claimed land for Redwood National Park  in the subject township  formerly accepted as belonging to Simpson. In response, Simpson filed a quiet title action against the federal government in 1980 in federal district court seeking to invalidate *1199 the BLM survey. This action was settled by a stipulated judgment, pursuant to which Simpson acknowledged the validity of the BLM survey in exchange for a conveyance of the land it was already occupying and using in accordance with the Gilcrest and Bones surveys.[1]
The survey controversy resurfaced in 1984, however, when the federal government initiated condemnation proceedings against Simpson to acquire property for construction of a bypass for Highway 101 in Humboldt County. Suddenly, Simpson found the BLM survey to its liking because the south-westward shift of boundaries effectuated thereby would result in a claim of additional acreage for which it would receive compensation in the inverse condemnation case. Accordingly, Simpson filed the instant quiet title action, alleging the validity of the BLM survey and resulting entitlement to the small parcel at issue in the federal inverse condemnation proceeding, and claiming title to the remaining 160-acre strip of land along the northwest border of the park. In denying Simpson's right to the latter parcel of property, the State has asserted the priority of the Gilcrest/Bones survey  the same survey which Simpson previously embraced. The estimated current value of the land at issue is $4 million.
(1) Appellant contends that the trial court erred in denying its motion to intervene in Simpson's quiet title action under section 387, subdivision (a) of the Code of Civil Procedure, which,[2] in pertinent part, provides: "Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding." The purpose of allowing intervention is to promote fairness by involving all parties potentially affected by a judgment. (Catello v. I.T.T. General Controls (1984) 152 Cal. App.3d 1009, 1013 [200 Cal. Rptr. 4]; Deutschmann v. Sears, Roebuck & Co. (1982) 132 Cal. App.3d 912, 915 [183 Cal. Rptr. 573].) (2) The right to intervene granted by section 387, subdivision (a), is not absolute, however; intervention is properly permitted only if the requirements of the statute have been satisfied. (Socialist Workers etc. Committee v. Brown (1975) 53 Cal. App.3d 879, 891 [125 Cal. Rptr. 915].) The trial court is vested with discretion to determine whether the standards for intervention have been met. (Northern Cal. Psychiatric Society v. City of Berkeley (1986) 178 Cal. App.3d 90, 109 [223 Cal. Rptr. 609]; Knight v. Alefosio (1984) 158 Cal. App.3d 716, 720 [205 Cal. Rptr. 42].)
Simpson argues that appellant's interest in the underlying action is indirect and remote, and so does not justify intervention. It is well settled that *1200 the intervener's interest in the matter in litigation must be direct, not consequential, and that it must be an interest which is proper to be determined in the action in which intervention is sought. (People v. Superior Court (Good) (1976) 17 Cal.3d 732, 736 [131 Cal. Rptr. 800, 552 P.2d 760]; Mary R. v. B. & R. Corp. (1983) 149 Cal. App.3d 308, 314 [196 Cal. Rptr. 871].) The "interest" referred to in section 387, subdivision (a), "must be of such direct or immediate character, that the intervener will either gain or lose by the direct legal operation and effect of the judgment." (Knight v. Alefosio, supra, 158 Cal. App.3d at p. 721; see also Jersey Maid Milk Products Co. v. Brock (1939) 13 Cal.2d 661, 663 [91 P.2d 599]; Mary R. v. B. & R. Corp., supra, 149 Cal. App.3d at p. 314.)
But the nature of the necessary direct interest in the litigation is undescribed by the statute. Nor is the decisional law helpful. As has been said: "[T]he point at which one's interest in the success of one of the parties to the action becomes direct, and not consequential, is not easily fixed. It has been the subject of much judicial discussion." (Fireman's Fund Ins. Co. v. Gerlach (1976) 56 Cal. App.3d 299, 302 [128 Cal. Rptr. 396].) Whether the intervener's interest is sufficiently direct must be decided on the facts of each case. (People ex rel. Rominger v. County of Trinity (1983) 147 Cal. App.3d 655, 661 [195 Cal. Rptr. 186]; Fireman's Fund Ins. Co. v. Gerlach, supra, 56 Cal. App.3d at p. 302.) But it is established that the intervener need neither claim a pecuniary interest nor a specific legal or equitable interest in the subject matter of the litigation. (County of San Bernardino v. Harsh California Corp. (1959) 52 Cal.2d 341, 345 [340 P.2d 617]; People ex rel. Rominger v. County of Trinity, supra, 147 Cal. App.3d at p. 661.) And section 387 should be liberally construed in favor of intervention. (Mary R. v. B. & R. Corp., supra, 149 Cal. App.3d at p. 315; Fireman's Fund Ins. Co. v. Gerlach, supra, 56 Cal. App.3d at p. 302.)
(3) We find in the record ample evidence of appellant's direct, substantial interest in the case. Appellant has asserted that its members frequently use the Park for recreational purposes. We learn too from the record that the League was instrumental in the establishment of the Park; in fact, all of the parcels in dispute once belonged to the League, and were donated to the State for the sole and express purpose of inclusion in the Park. Memorial groves, named after members of the League, lie within the disputed area and would certainly not be maintained in their present pristine condition under Simpson's ownership. The League has also claimed, without contradiction, that its reputation and integrity as a conservation organization will suffer if property which it acquired through donation and targeted for preservation is transferred to private ownership for exploitation.
That appellant's members are frequent users of the Park, will not, standing alone, justify intervention. (People ex rel. Rominger v. County of Trinity, *1201 supra, 147 Cal. App.3d 655, 662.) Intervention cannot be predicated solely on the League's contribution to the creation of the Park, and while appellant donated the land which comprised a part of the Park, it no longer claims a legal or equitable interest in the property in dispute. Moreover, appellant's support for the State's claim to the property is an insufficient basis for intervention. (Faus v. Pacific Elec. Ry. Co. (1955) 134 Cal. App.2d 352, 359-360 [285 P.2d 1017].) Still, appellant's interests in the underlying litigation extend far beyond a general and historical preference for preservation of the current borders of the Park. The League was formed and continues to exist for the purpose of conserving lands such as those in dispute here in their natural state, and has so represented itself to members and donors. If property acquired by donation in an effort to create and preserve a park is privately exploited, the impact upon appellant's reputation might well translate into loss of future support and contributions.
That appellant will not suffer direct pecuniary harm, and has failed to establish with absolute certainty the detriment an adverse judgment might cause, does not defeat its right to intervene. It is not necessary that an intervener's interest "`be such that he will inevitably be affected by the judgment. It is enough that there be a substantial probability that his interests will be so affected.'" (People ex rel. Rominger v. County of Trinity, supra, 147 Cal. App.3d 655, 663; Timberidge Enterprises, Inc. v. City of Santa Rosa (1978) 86 Cal. App.3d 873, 881 [150 Cal. Rptr. 606].) Here, we think appellant has demonstrated a cognizable interest in perpetuating its role and furthering its avowed policies. (County of San Bernardino v. Harsh California Corp., supra, 52 Cal.2d at pp. 345-346; Timberidge Enterprises Inc. v. City of Santa Rosa, supra, 86 Cal. App.3d at p. 882.)
(4a) Yet another factor which favors a finding of appellant's direct interest in the subject litigation is its present right to control development of the property, which would of course be altered by a judgment in favor of respondent. (5) (See fn. 3.), (4b) As one of the exhibits demonstrate, in donating land to the State the League placed a recital in the deed specifying that such property be used for "state park purposes."[3] (6) "`It is well settled that where a grant deed is for a specified, limited and definite purpose, the subject of the grant cannot be used for another and different purpose.' [Citations.]" (Big Sur Properties v. Mott (1976) 62 Cal. App.3d 99, *1202 103 [132 Cal. Rptr. 835].) (4c) Hence, only as long as the State owns the property in dispute, can appellant rely upon the restrictive language to prevent an inconsistent use of the donated parcels. (Ibid.) For this and the related reasons earlier described, we conclude that appellant has demonstrated the requisite specific and direct interest in the outcome of the litigation justifying intervention (People ex rel. Rominger v. County of Trinity, supra, 147 Cal. App.3d 655, 662-663), and that the trial court's contrary finding was error. (Timberidge Enterprises, Inc. v. City of Santa Rosa, supra, 86 Cal. App.3d at p. 882.)
(7a) We turn next to the issue of potential delay and confusion which arguably might flow from intervention. Even if otherwise proper, "intervention will not be allowed when it would retard the principal suit, or require a reopening of the case for further evidence, or delay the trial of the action, or change the position of the original parties. [Citation.]" (Sanders v. Pacific Gas & Elec. Co. (1975) 53 Cal. App.3d 661, 669 [126 Cal. Rptr. 415]; People v. Superior Court (Good), supra, 17 Cal.3d 732, 737; Fireman's Fund Ins. Co. v. Gerlach, supra, 56 Cal. App.3d at p. 303.) Respondent argues that such is the case here, in that appellant will raise issues of implied dedication which have not heretofore been presented by the State as part of its claim to the disputed property, thereby impermissibly enlarging the scope of the litigation.
While appellant undeniably intends to introduce new causes of action, our analysis of the nature of such new matters convinces us it will not delay the litigation, change the position of the parties, or even require introduction of additional evidence. Thus, appellant will claim that respondent, in law or in fact, dedicated the land in dispute to the public. (8-11) (See fn. 4.), (7b) Resolution of that issue will center upon essentially the same facts as those involved in the State's claims of adverse possession and agreed boundaries.[4] (Cf. Brumbaugh v. County of Imperial, supra, 134 Cal. App.3d *1203 at p. 562; Cherokee Valley Farms, Inc. v. Summerville Elementary Sch. Dist., supra, 30 Cal. App.3d at p. 585.) We perceive no danger that the dedication issue will prolong, confuse or disrupt the present lawsuit. (People ex rel. Rominger v. County of Trinity, supra, 147 Cal. App.3d at pp. 664-665; Berkeley Lawn Bowling Club v. City of Berkeley (1974) 42 Cal. App.3d 280, 290 [116 Cal. Rptr. 762].)
Nor do we find that intervention would subvert the salutary purposes of section 387, subdivision (b), to obviate delays and prevent a multiplicity of suits arising out of the same facts, while protecting the interests of those affected by the judgment. (Catello v. I.T.T. General Controls, supra, 152 Cal. App.3d 1009, 1013; Johnson v. Santos (1983) 148 Cal. App.3d 566, 569 [196 Cal. Rptr. 145].) On the contrary, were intervention to be denied in the present case, appellant would be forced to bring a separate action against Simpson. (Cf. Sanders v. Pacific Gas & Elec. Co., supra, 53 Cal. App.3d at p. 669.)
(12) A final telling factor in our decision is the conviction that appellant's own substantial interests probably cannot be adequately served by the State's sole participation in the suit, since it here seeks merely to protect its fee interest in the property, which may turn out to be simply pecuniary in nature. The State might, for example, choose to settle the case for a *1204 monetary consideration in exchange for relinquishment of its claims of title to the land. But appellant's interest in the litigation  to preserve the property in its natural condition  is singular and indeed unique, and powerfully militates in favor of intervention. (People ex rel. Rominger v. County of Trinity, supra, 147 Cal. App.3d at p. 665.)
For all of the foregoing reasons we conclude that the trial court's denial of the motion to intervene was an abuse of discretion. (People ex rel. Rominger v. County of Trinity, supra, 147 Cal. App.3d at p. 665; Bustop v. Superior Court (1977) 69 Cal. App.3d 66, 73 [137 Cal. Rptr. 793].) The judgment is reversed and the case remanded to the trial court with directions to grant appellant's motion to intervene and to conduct further proceedings in accordance with the views expressed herein. Costs are awarded to appellant Save-The-Redwoods League.
Racanelli, P.J., and Holmdahl, J., concurred.
NOTES
[1] This stipulated judgment by its terms, has no binding effect on Simpson, the federal government or third parties "on any other disputes...."
[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.
[3] Respondent complains that only one deed was introduced into the record containing the recitation limiting the use of the property. We can infer, however, from the argument of counsel, that other deeds by which appellant donated property to the State contained identical or similar language. And even if the restrictive language were found in only one deed, it would be sufficient to give appellant a claim based upon that language.

Respondent also submits that appellant waived this issue by failing to present it to the trial court. The record disproves this contention, as it shows that both appellant's moving papers and counsel for appellant in oral argument referred to the recital in the grant deeds.
[4] Dedication may be implied "in one of two ways: either by the affirmative acts or acquiescence of the property owner (an implied-in-fact dedication), or by the continuous adverse public use of the property throughout the prescriptive period without substantial interference by the owner (implied-in-law dedication). (Union Transp. Co. v. Sacramento County (1954) 42 Cal.2d 235, 240-241 [267 P.2d 10].)" (Brumbaugh v. County of Imperial (1982) 134 Cal. App.3d 556, 562 [184 Cal. Rptr. 11].)

The doctrine of agreed boundaries, asserted by the State in the underlying quiet title action, provides that where the actual position of a boundary is uncertain, a division of land between coterminous owners in accordance with their deed description, and mutual acquiescence or agreement in their practical location of the boundary over a long period of time is held to constitute the location of the true boundary as called for by the deed. (Mello v. Weaver (1950) 36 Cal.2d 456, 459-460 [224 P.2d 691].) An actual argument or dispute over the boundary is not necessary. (Ibid.; see also Crook v. Leinenweaver (1950) 100 Cal. App.2d 790, 792 [224 P.2d 891].) The fact of agreement may be inferred from the acts of the parties. (Ibid.) Acceptance and acquiescence in the boundary for a period equal to the statute of limitations or under such circumstances that substantial loss would be caused by a change of its position is sufficient to establish a property line by agreement. (Zachery v. McWilliams (1972) 28 Cal. App.3d 57, 60 [104 Cal. Rptr. 293]; York v. Horn (1957) 154 Cal. App.2d 209, 213 [315 P.2d 912].) An agreed boundary line may be established deliberately, by acquiescence, or by mistake. (Finley v. Yuba County Water Dist. (1979) 99 Cal. App.3d 691, 699 [160 Cal. Rptr. 423].)
Implied-in-fact dedication is a similar concept, which requires a showing of an intention by the owner, indicated by words or deeds, to dedication and to public use, and an acceptance either by public use or formal resolution. (Cherokee Valley Farms, Inc. v. Summerville Elementary Sch. Dist. (1973) 30 Cal. App.3d 579, 585 [106 Cal. Rptr. 467]; Kitzman v. Newman (1964) 230 Cal. App.2d 715, 722-723 [41 Cal. Rptr. 182].)
Implied-in-law dedication is merely acquisition of property by prescription, with all the elements of adverse possession equally applicable. (Cherokee Valley Farms, Inc. v. Summerville Elementary Sch. Dist., supra, 30 Cal. App.3d at p. 585.) The only difference in the two legal theories is the character of the adverse use necessary to establish each cause of action. (Brumbaugh v. County of Imperial, supra, 134 Cal. App.3d at p. 562.) "When ... a litigant seeks to prove dedication by adverse use, the inquiry shifts from the intent and activities of the owner to those of the public. The question then is whether the public has used the land `for a period of more than five years with full knowledge of the owner, without asking or receiving permission to do so and without objection being made by anyone.'" (Gion v. City of Santa Cruz (1970) 2 Cal.3d 29, 38 [84 Cal. Rptr. 162, 465 P.2d 50]; Richmond Ramblers Motorcycle Club v. Western Title Guaranty Co. (1975) 47 Cal. App.3d 747, 756 [121 Cal. Rptr. 308].) "What must be shown is that persons used the property believing the public had a right to such use. This public use may not be `adverse' to the interests of the owner in the sense that the word is used in adverse possession cases." (Gion v. City of Santa Cruz, supra, 2 Cal.3d at p. 39; Brumbaugh v. County of Imperial, supra, 134 Cal. App.3d at p. 562.)